UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LEONA T.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

NO: 2:18-CV-0093-TOR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 13 and 15). This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court **grants** Defendant's motion and **denies** Plaintiff's motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the

analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income disability benefits on March 4, 2015, alleging a disability onset date of December 19, 2014. Tr. 18. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 18. A hearing was held before an Administrative Law Judge on October 25, 2016. Tr. 18. The ALJ rendered a decision denying Plaintiff benefits on January 11, 2017. Tr. 15-32.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 19, 2014, the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff has the following severe impairments:

> major depressive disorder, posttraumatic stress disorder (PTSD), social anxiety disorder, panic disorder, borderline personality disorder, alcohol use disorder, cannabis use disorder, osteoarthritis right knee status post replacement surgery April 4, 2016, obesity, cervical degenerative disc disease, and degenerative joint disease right shoulder (20 CFR 404.1520(c) and 416.920(c)).

Tr. 20. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 21-22. The ALJ then determined that Plaintiff had the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions: she cannot climb ladders, ropes, or scaffolds, kneel, or crawl, and she can occasionally perform all other postural activities; with her right upper extremity, she can only occasionally reach overhead and frequently reach in all other directions; she can have occasional exposure to extreme cold; she can have no exposure to hazards, such as unprotected heights and moving mechanical parts; she is limited to simple, routine, and repetitive task with a reasoning level of 2 or less; she needs a routine and predictable work environment requiring no more than simple decision-making; she can have no contact with the public and only occasional superficial contact with supervisor and coworkers; and she cannot work at an assembly line pace.

Tr. 24. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 30. The ALJ then found that (1) Plaintiff is "an individual closely approaching advanced age," (2) Plaintiff "has a limited education and is able to communicate in English[,]" and (3) the "[t]ransferability of job skills is not material to the determination of disability[.]" Tr. 30. The ALJ then found that, based on Plaintiff's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant number in the national economy that the claimant can perform[,]" including garment sorter, mail clerk, and housekeeping cleaner. TR. 30-31. The ALJ concluded that Plaintiff has not been under a disability through the date of the decision. Tr. 31. In light of these

findings, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied her claims on that basis. Tr. 32.

The Appeals Council denied Plaintiff's request for review on January 18, 2018, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

## ISSUES

Plaintiff raises three issues for review:

1. Whether the ALJ committed harmful error in rejecting medical opinions;

2. Whether the ALJ committed harmful error in rejecting Plaintiff's subjective complaints; and

3. Whether the ALJ erred at step five.[1]

ECF No. 17 at 3.

//

//

//

---

[1] This issue is wholly dependent upon Plaintiff's argument that the ALJ erred in discounting the medical opinion of Dr. Duris, Dr. Crosier, and Dr. Martin. Because the Court disagrees with Plaintiff's argument regarding the medical opinions, the Court need not address this issue.

DISCUSSION

A. **Opinions of Treating Sources**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). Regardless of the source, an ALJ need not accept a

physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d at 1228 (quotation and citation omitted).

   1. <u>Opinion of Dr. Duris</u>

Dr. Duris diagnosed Plaintiff with major depressive disorder, recurrent, panic disorder without agoraphobia, and borderline personality disorder. Dr. Duris opined that Plaintiff suffers a marked limitation in her ability to (1) adapt to changes in a routine work setting, (2) communicate and perform effectively in a work setting, (3) complete a normal work day and work week without interruptions from psychologically based symptoms, and (4) maintain appropriate behavior in a work setting. Tr. 440. Dr. Duris conducted two mental status examinations with identical results. Under part 1 of the mental status examinations, Dr. Duris observed that Plaintiff (1) appeared adequately groomed and with adequate hygiene, her clothes were appropriate for weather and situation, (2) her speech was normal in terms of amount, productivity, flow and rate, there was no evidence of pressured, slurred stuttering or halting in her speech pattern, (3) she presented as generally open, cooperative, and relatively genuine in her responses, (4) her mood was generally depressed, and (5) affective expression was labile. Tr. 385, 441. Under part 2, Dr. Duris indicated Plaintiff was within normal limits in all categories: (1) thought process and content, (2) orientation, (3) perception, (40

memory, (5) fund of knowledge, concentration, (6) abstract though, and (7) insight and judgment. Tr. 385-86, 442.

The ALJ "gave little weight to the Department of Social and Health Services evaluations by Mark Duris, Ph.D., completed on May 6, 2014 and March 3, 2015." Tr. 19. Among other things, the ALJ reasonably found that the opinion of Dr. Duris that Plaintiff has moderate to marked functional limitations is not consistent with normal mental status examination results reported by Dr. Duris. Tr. 19. Accordingly, the Court finds that the ALJ did not commit reversible error in discounting the opinion. *Bayliss v. Barnhart*, 427 F.3d at 1216 (inconsistency within physician's records is a clear and convincing reason for discounting the opinion); *see Bray*, 554 F.3d at 1228 (an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings."). Moreover, the ALJ properly discounted the opinion of Dr. Duris because his opinion was not based on a complete record, as Plaintiff falsely denied a history of drug and alcohol use when reporting to Dr. Duris. *See McFeely v. Colvin*, 2014 WL 2918552, at *2 (E.D. Wis. June 27, 2014). The failure to report

the substance abuse is not trivial given other medical opinions suggest Plaintiff's symptoms may be related, at least in part, to her substance use.[2]

2. <u>Dr. Crosier</u>

Dr. Jonathan P. Crosier treated Plaintiff when she was admitted to the emergency room after she slipped and fell the night before. Dr. Crosier observed that Plaintiff was in moderate discomfort and had a slow deliberate gait with normal station. Tr. 833. Dr. Crosier determined she had a back strain and prescribed 12 tablets of Norco 5/325 mg as needed for pain and 30 tablets for Flexeril for muscle spasms. He recommended Plaintiff "keep active, but avoid aggressive activity such as running, jumping, or heavy lifting." Tr. 833.

Plaintiff appears to argue that the ALJ erred in finding that Dr. Crosier's exam finding were benign. ECF No. 13 at 13. Plaintiff's entire argument on this point follows:

> The ALJ asserted that Dr. Crosier's exam findings were benign. (Tr. 21). However, Dr. Crosier's objective findings included decreased range of motion of her spine, tenderness of muscles in the low back, and muscle

---

[2] At the hearing, Dr. Marian F. Martin testified that because Dr. Duris was not aware of the substance abuse, "it raises questions about whether or not all of those symptoms that he listed that meet the diagnostic criteria for depression would still be considered as symptoms of depression if the substance use was take into account." Tr. 65.

> tension. He prescribed pain medication. (Tr. 833). Thus, his examination results indicated a legitimate complaint of back pain.

ECF No. 13 at 13. The ALJ did not commit reversible error. First, the ALJ's conclusion that the results of the examination are benign is an observation about the findings of Dr. Martin that is reviewed for substantial evidence; the ALJ does not specifically discount the opinion of Dr. Martin. Even if Plaintiff is correct that the examination demonstrates Plaintiff has a "legitimate complaint of back pain," Plaintiff must prove the back pain causes more than minimal limitations to Plaintiff's ability to perform work activity to be considered a severe impairment. Plaintiff has not argued this point. Nor has Plaintiff explained how the back pain limited Plaintiff in a manner more severe than what is accounted for in the RFC. Moreover, the complained of back pain was caused by a fall, and Plaintiff does not argue the symptoms continued.[3] Plaintiff has thus not met her burden of showing the ALJ committed harmful error. *See Shinseki*, 556 U.S. at 409-10.

//

//

---

[3] Notably, Plaintiff was told to follow up with her primary care provider if symptoms continued, Tr 841, but Plaintiff does not point to any record showing the pain continued.

3. <u>Dr. Martin</u>

Dr. Marian F. Martin provided expert testimony at the hearing. Tr. 47. During an extensive back and forth regarding the potential and documented effects of Plaintiff's substance abuse, Dr. Martin opined that Plaintiff would have a marked limitation in concentration, persistence and pace[,]" reasoning: "based on my experience and research, I don't think somebody who's using marijuana daily and alcohol a few times a week or on weekends is going to make it to work on any kind of regular basis." Tr. 60. The ALJ inquired whether "there's any specific affirmative evidence in this file that suggest she's ever actually experienced that degree of limitation in concentration, persistence and pace, even while, you know, abusing substances." Tr. 62. Dr. Martin could not point to any evidence. *See* Tr. 62.

Plaintiff argues that the ALJ erred in rejecting Dr. Martin's opinion that Plaintiff would have occasional absenteeism. ECF No. 13 at 13. The ALJ rejected the opinion of Dr. Martin only as to his opinion that Plaintiff would have occasional absenteeism because of marijuana use. Tr. 28. The ALJ correctly found that this was merely an opinion based on general experience, rather than the medical evidence in the record. TR. 28-29. An ALJ may reject an opinion that is unsupported by clinical findings. *Bayliss*, 427 F.3d at 1216. As such, the ALJ did not err in discounting the opinion of Dr. Martin.

B. **Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.927. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F .3 d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the

claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208.

The ALJ did not err in finding Plaintiff was not entirely credible. The ALJ found several inconsistencies between Plaintiff's alleged limitations and her actual conduct, and otherwise found her claimed symptoms were not supported by the record. These are clear and convincing reasons for discounting Plaintiff's credibility, and are supported by substantial evidence. First, Plaintiff's alleged limitations were not consistent with the ALJ's own observation at the hearing. Plaintiff testified that she could sit for only 20 minutes at a time, yet – as the ALJ observed – she did not stand for an hour during the hearing, and only stood up after the ALJ pointed out that Plaintiff had been sitting for an hour. Tr. 25. Plaintiff testified that it was unusual for her to sit for that long, and that she stood up only after receiving confirmation that she was free to stand up if necessary, and that she was experiencing pain as a result of sitting for so long. ECF No. 13 at 16. However, the ALJ specifically told the Plaintiff at the beginning of the hearing: "I

want you to please try to relax. I want you to make yourself as comfortable as you can, and do whatever you need to do throughout the hearing to keep yourself comfortable[.]" Tr. 41. Second, the ALJ found an inconsistency between Plaintiff's testimony and the record regarding her church attendance,[4] which is significant given the alleged severity of Plaintiff's social limitations (at the hearing, Plaintiff alleged she only attended once because there are too many people). Tr. 25. Third, the ALJ found that Plaintiff's activities of daily living – including gardening, household chores, going to the library, food bank, grocery store, church, and Bible study groups – undermine the claimant's symptom allegations. Tr. 28. For example, Plaintiff indicated that she did not spend time

---

[4] The ALJ found Plaintiff's testimony – that she had only been to church once and Bible study once since the alleged onset date – was not consistent with the record. Tr. 28; *compare* Tr. 85 (Plaintiff testifying that she has "gone to church once and Bible study once), *with* TR. 726 (February 24, 2016: Plaintiff reported that she had attended a women's bible study group), Tr. 732 (March 14, 2016: "Plaintiff "reports that she has been attending church study groups each week and she went to church once."), *and* Tr. 84 (testimony on October 25, 2016: Plaintiff admitting she went to church "about a month ago").

with others and did not go anywhere on a regular basis, Tr. 287, yet she admitted she was "making friends with her neighbors and trying to expand her social network[,]" had "been attending church study groups each week[,]" Tr. 732, and had kept in contact with women from her church and her pastor for support after her knee surgery, Tr. 737. *See also* Tr. 749 ("CSS praised and discussed ongoing support from church group, friends and family"). Finally, the ALJ observed that, despite Plaintiff's testimony that "she stays in bed three to four days if she is depressed and this happens every two to three months" and suffers from panic attacks that cause "heart palpations, sweating, shaking, crying, diarrhea, and vomiting[,]" Tr. 25, Plaintiff "did not report to treatment providers that she stayed in bed three to four days every two to three months, nor did she report symptoms of vomiting and diarrhea from anxiety approximately every three months[,]" Tr. 27.

Whether viewed in terms of inconsistency or a change in Plaintiff's ability to cope with others, the ALJ did not err in finding Plaintiff alleged limitations were inconsistent with the record. An observed contradiction between the Plaintiff's claimed symptoms and actual ability is a clear and convincing reason to find Plaintiff not entirely credible. Moreover, Plaintiff does not even attempt to argue how, if erroneous, the finding that Plaintiff is not entirely credible caused any

harmful error. The Plaintiff has thus failed to meet her burden. *See Shinseki*, 556 U.S. at 409-10.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** January 16, 2019.



THOMAS O. RICE
Chief United States District Judge